FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUN 05 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

                        12 CR 668 (SJ) (RML)
                        13 CR 264 (SJ) (RML)

v.

**MEMORANDUM
AND ORDER**

SHAKA STAYMAN,

      Defendant.

---------------------------------------------------X

A P P E A R A N C E S

BRIDGET RHODE
UNITED STATES ATTORNEY
271 Cadman Plaza East
Brooklyn, NY 11201
By:   Paul Tuchmann
*Attorney for the government*

LAW OFFICE OF DONNA NEWMAN
20 Vesey Street
Suite 400
New York, NY 10007
By: Donna Newman
*Attorney for Defendant*

**JOHNSON, U.S.D.J.:**

      Presently before the Court is the government's motion pursuant to Federal Rule of Civil Procedure ("Rule") 35 to re-sentence defendant Shaka Stayman's ("Defendant" or "Stayman") to a term lesser than the 84 month term imposed by

1

then-assigned Judge Gleeson. Based on the submissions of the parties, the oral argument heard on April 25, 2017, and for the reasons stated below, the motion is denied.

## BACKGROUND

The facts and circumstances surrounding this action are not in dispute. On April 17, 2012, Stayman was arrested in Atlanta, Georgia pursuant to a warrant issued in this District charging him with defrauding heirs of decedents and financial institutions through wire transactions. He appeared in on April 23, 2012 to be arraigned for the aforementioned fraud and was released on bond. (See Indictment ¶ 6.) He was notified of the effect of committing an offense while on release. (See id.)

Stayman proffered and attempted to cooperated with the government. However, fifteen days later, on May 8, 2012, and while cooperating with the government, he returned to the very same criminal conduct, to wit: attempting to defraud financial institutions using the identities of others. He was successful two of the four times he tried and he garnered $120,000. (PSR at ¶ 39.)

Stayman was charged in a three-count indictment in this District on October 19, 2012 for twice conspiring to commit wire fraud via identity theft, and additionally, for committing the same offense while on pre-trial release. (See generally Indictment.) On April 11, 2013, Stayman was charged by information in

2

the Western District of North Carolina with participating in a different but similar fraudulent scheme (the "WDNC Scheme"). The WDNC Scheme consisted of Stayman and others obtaining passwords, user names and other security information of account holders of The Teachers Insurance and Annuity Association – College Retirement Equities Fund ("TIAA-CREF"). (See Information in action styled 13-CR-264.) The conspiracy charged therein took place from at least June 2010 through November 2010.

Pursuant to Rule 20, the North Carolina action was transferred to this District and consolidated with Stayman's 2012 indictment already pending before then-assigned Judge Gleeson. Stayman then cooperated with the authorities in North Carolina and was instrumental in the conviction of six others involved in the WDNC Scheme, five of whom the government would have been unable to prosecute without Stayman's assistance. Each of those six WDNC defendants received a sentence of 36 months or less.

On May 10, 2013, Stayman pled before Judge Gleeson to two Counts of Conspiracy to Commit Wire fraud, one under the indictment brought in this District, the other under the Information from the Western District of North Carolina. A 5K1.1 letter did not issue due to this post-arrest conduct.

The PSR in the consolidated cases placed Stayman in the criminal history category of II and his total offense level was determined to be 28. The resulting guideline range was 87-108 months imprisonment. At sentencing, Judge Gleeson

3

took into account over a dozen letters written by Stayman's friends and family, attesting to his character, about which Judge Gleeson sharply disagreed. (See Transcript of 12/2/14 Sentencing ("Tr.") at 15 ("Lots of people who love you wrote to me and they said it must be he hung out with the wrong people. I didn't believe that. I don't blame them. They don't know. You are the wrong people.")

Judge Gleeson also rejected Defendant's argument that the wire fraud guidelines are unfairly high in that they take into account more than the actual loss amount but also the intended loss amount:

> I beefed about this white collar, this fraud guidelines before, but I don't have a problem with it in your case…I think a really important thing to look at for a judge is at the end of the fraud that was committed, or at the end of the fraud that was attempted. . . is anybody crying? Who is crying?
>
> Because the real problem with this fraud guideline is, in these market fraud cases, where two million people lose a dollar each . . .in my view that is not nearly as egregious as your fraud. These are individuals. We are talking about people's retirement annuities. These people cried, cried hard, really hurt them, and in a way really hurting them hard, the way your fraud was intended to do, and in some cases did. It is much more blameworthy, even if the amount of money they lose is small compared to the amounts of money that a fraud on the market involves.
>
> So these poor people, and I really think the same is true…you can't identify the dead people whose estates you were raiding in Brooklyn, but still those people have spouses and children and grandchildren who would be the beneficiaries of that money and that's why I really don't have a problem with the guidelines in your case because I think in your case there are factors that bear upon how much blame you deserve.
>
> [...]
>
> There seems to be something pervasive and incorrigible about your desire to defraud. You are a smart guy. You didn't need to do this but you chose to

4

do it. As you said in your letter, you did it with your eyes open and you got locked up and you did it again.

(Tr. at 25-27.)

Nevertheless, Stayman received the benefit of a slightly below-guideline sentence of 84 months.

## DISCUSSION

Rule 35(b)(2)(B) provides, in relevant part that, upon the government's motion, made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved . . . information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing." Fed. R. Crim. P. 35(b)(2)(B). Therefore, there is no question that the Court has the right to reduce Stayman's sentence. However Rule 35 is discretionary. In the government's moving papers it is acknowledged that "Judge Gleeson was aware of all of these facts" at the sentencing stage. The undersigned, too, has reviewed the entire file (save the letter written to Judge Gleeson by the defendant, which the parties have been unable to provide to the Court), and the Court is not impressed with the level of cooperation in this case because Stayman came to the table <u>ab initio</u> with unclean hands and an intent on continuing the very same illegal conduct without intermission. He only gave up the six North Carolina defendants *after* committing these additional crimes and getting caught doing so. That others in

5

North Carolina received lower sentences is of no moment in this case, as there is no indication that those others share with Stayman a commitment to a lifetime of fraud.

## CONCLUSION

For the foregoing reasons, the government's motion is DENIED.

SO ORDERED.

Dated: May 31, 2017
Brooklyn, New York

/s/ USDJ STERLING JOHNSON, JR.